Please be seated. We have four cases on the calendar this morning. Patent case from District Court, two patent cases from the PTAB, and a veterans case that is being submitted on the briefs and therefore will not be argued. First case is Medegraph v. Medtronic, 2015-2019. Mr. Cahoney? Good morning, Your Honor. Please proceed. May it please the Court. This is a straightforward case. With respect to the method claims in this case, what Medtronic is asking this Court to do is grant summary judgment in its favor on a legal standard that did not exist. When the District Court rendered its decision. Well, the question is whether there is anything to do on remand if we were to send it back to apply the whatever the number is, Akamai 5, Akamai 4, August, the most recent dialogue. What is there to do? Well, for one, the plaintiff, Medgraph, would like to be able to prepare its evidence and present its evidence in a way consistent with the new legal standard. Don't you think you should have pointed in your brief here to the facts that you think you can establish to meet the more recent standard? We have, Your Honor. What are those facts? I'd like to direct the Court's attention to the gray book, page 14, where we detail, where Medgraph details. Tell me what they are. I mean, Akamai 5, is that what we're going to call it? Yes, Akamai 5. So, Akamai 5 says one way to get attribution is to show that patient steps here, those are the ones we're talking about. Yes, Your Honor. That their performance was a condition of their participating in Care Link. And I don't see that you can show that. So, what can you show? My understanding, Your Honor, of the standard under Akamai 5, the controlling standard, the new governing law, is that an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance. And all Akamai 5 says is that's one way of doing it. There possibly could be others. But just on that one, can you meet that standard? Absolutely, Your Honor. How is that? I thought that the patients can use Care Link with, for example, the continuous monitoring system, which is therefore would meet it and also not download the material over the syncing system, but actually turn it over. That is one way that the Care Link system can be used. Right, so the patient's, so the provision of the Care Link system is not conditioned on the patient's performance of the claimed steps. Well, the optimal benefit of the Care Link system, or at least the advertised and promoted benefit of the Care Link system, and as MedGraph's expert, Dr. Bergeron, testified, if you follow the steps of the Care Link system, where the patient uploads his or her data, medical data, onto the website, and this data is transmitted to a central server in Minneapolis, and then the physician, who has been provided software, downloads it. I just want to focus on, this has several parts. I don't see how you have identified for us any evidence that the patient's use of the Care Link system is conditioned on their performing the patient's steps of the claim. That's not the end of the inquiry, but I guess I wanted to do that first. And what you're answering is, well, they can or they can't use, but that's not conditioning. Well, there is, in order to enjoy the optimal benefit of the Care Link system, they must transmit this data over the system. And Medtronic controls the timing of it, the manner of it, provides the software for it, provides the software to the physicians. So by providing the passwords and access to the server, and providing the software, and setting up the whole system for patients to upload their medical relevant data, and for physicians or health care providers to download that data, and perform charts and graphs. And didn't the district court find that MedGraph had not demonstrated that any entity or entities, either singly or in combination with each other, had performed all of the steps? So if it goes back, how is it going to be different? Your Honor, the district court only found, as we briefed in our papers, only found that under Occamie 4, 3 and 4, that no entity had practiced all the steps. To be very clear. But this says entity or entities, either in combination or singly. But under Occamie 4, under Occamie 3 and 4, the court did not inquire into whether, the court did not inquire into, it stopped its analysis. The district court stopped its analysis once it decided that multiple parties were participating in the activity. Did not go beyond that. If you read the court's opinion very carefully, the district court stopped its analysis. It simply said that based on the law set on Occamie 4 and 5, sorry, 3 and 4, more than one party is carrying out the steps. And Magrath admits to that. And it cites the expert, Dr. Bergeron, that Magrath admits to that fact. But does not make any finding with respect to the new law, which is Occamie 5. Counsel, is your case that the district court didn't make the necessary analysis? Or is your case that there are more things that the district court needs to consider than are in the record before us? In other words, why can't we make that analysis? You're asking us to vacate and remand. That's correct, Your Honor. Why can't we just look at it and say, on the record before us, the outcome will be the same under Occamie 4 or Occamie 5. So, the efficiency says, we'll decide it. Because the details that Judge Taranto has pointed out, the details of meeting this new standard, how it's divided between the different parties, has not been laid out in the way that we would like to lay it out. And we could, we can lay it out, if we know what the legal standard is. I mean, even the declaration of the expert and what evidence the expert looked into. And even in our discovery, we would have perhaps investigated further nuances that are particularly relevant to the new standard. We have a standard now. The district court simply went to step one, which is very appropriate, and said, multiple parties are doing this. End of story. Under Occamie 3 and 4, you don't have a case. And we agree to that. Can I focus you on the piece I was hoping to get to, because I don't actually see how you get anywhere near the conditions participation piece of Occamie. It's immediately after that piece of Occamie 5, there's an extremely interesting CF site to the Grokster case. And a parenthetical that says, vicarious liability can be established by showing that you profited from the other's activity and had a right and ability to control it. Now, I assume that you can make, just for purposes of this question, that you can make out a case that Medtronic profited from the performance by patients of the patient steps. Yes. In particular, presumably they sell more insulin pumps when the insulin pumps become more useful. That's correct. What about the ability and right to control how the patients use the thing, measure the information, send the information, record the information. Where is there any suggestion of a possibility that Medtronic has a right or ability to control that? One of our claims in this case is inducement. Simply by, if we can prove that they induce the using, they induce the practicing of these steps. And we submit, Your Honor, that they have the right. Wait a minute. Now you're going back to the last on BANC. No inducement without direct infringement. So you've got to get Medtronic held liable for direct infringement by attributing to Medtronic all of the patient steps. That's correct. And they're inducing those steps to happen. So they're encouraging. They're providing incentive and encouragement by advertising, by marketing. Can you talk in the language that this court used following the Supreme Court in Grokster of ability and right to control here the patients in the performance of the patient steps? Yes. Medtronic provides the software, provides the entire system, the password, the software, the website that's the interface between the patient and Medtronic. And by doing so, it controls how the system is going to be used, when the system is going to be used. It makes updates. It provides information. It's basically in control of the entire system and process. And when it wants to modify or encourage certain activities, and in this case, the uploading it advertises and promotes, it says, in fact, it specifically cites the literature, studies that if you want to get, we've been able to show that the patient health in these rural patients was improved by using this system where patients were sent their data remotely to the physician as opposed to going into the doctor's office because there's more continuous and regular patient data being sent to the doctor. So they have actual studies that actually carried out the steps and they cite and tout these studies as their evidence to convince the patients and the doctors to do exactly what gets these optimal results. And these studies have a very detailed methodology and the detailed methodology includes the transmission of data, I'm sorry, medical data from the patient to the system and for the doctor to download this information in the form of charts and graphs. Counselor, you want to save a good deal of time, you can continue or save it as you wish. It is well settled that the intervening new law controls a pending case. The district court's decision should be, that it made its decision on originally is obsolete. It did not do analysis or look into the facts or make factual findings based on Occupy 5. That is a fact. It specifically stated that it decided the case simply, it stopped its analysis simply when it decided that multiple parties are participating in the activity. The case should be remanded and decided on existing law. With respect to the system claim in this case, Medtronic has asked the court to read out the term one of and advocates a construction that limits the language of the claim to one particular embodiment of the claim which is completely inconsistent with the specification and the intrinsic evidence that describes the two alternatives, using the internet or using facsimile. That's all I have to say. I would like to reserve the rest of my time for rebuttal, please. We will save it for you. Thank you. Mr. Barsky. Mr. Barsky, you do agree that the district judge decided this case on the wrong law, don't you? On law that was changed in the second en banc, yes. On the wrong law, because during the course of the appeal, the law has changed, and under our rules, we apply the new law. Yes, I agree with that completely. What circumstances could there be under which we would not send it back and say to the district judge, sorry about that, but it's a redo by definition. What circumstances would call for any other result? There are two circumstances, Your Honor. The first is that there is no evidence in this fully developed record, after years of litigation, many depositions, tens of thousands of documents exchanged by the parties, that the new prong that was introduced by Akamai 5 for attributing the conduct of some parties, or one or more parties, in performing one or more steps of a method claim can be attributed to Medtronic. And I'm going to address that. I'm also going to address the second circumstance, Your Honor, which is that in this case, before we even get to the question of whether the actions of other persons in carrying out the steps of the claim method, here, doctors and patients, in addition to the defendant, Medtronic, before we ever reach that question, we have to address the question that Judge Lurie addressed earlier, which is there is no evidence in this record that all of the steps of the claimed method. We don't think that there is enough circumstantial evidence to show, to infer, by a preponderance of the evidence, it's more likely than not, that somebody somewhere, some patient, did all of the things to complete the process when, I don't know what is it, all but one of the devices in your own brochures for use for this, in fact, meet one of the two elements that you dispute, namely, you take it off after you do the measuring. Everything except your continuous monitoring thing. And it's perfectly clear that it's highly likely that a bunch of this information is being synced. I just don't see how that's a starter of a proposition for no evidence that would allow an inference that it's more likely than not that somewhere, somewhere, somebody in the United States did this. Well, the answer to your question very directly is no. I don't think there is evidence in this record that would support that inference here. Am I right that in your brochure, every single device, the, I forget the name of it, there are insulin pumps and then there are glucose measuring devices, but not the continuous monitor. They would all meet the requirement, the claim elements of measuring and taking it off. No, I don't agree with that. What doesn't? The claim at issue here requires a fairly complex confluence of circumstances for there to be inference. I was just talking about, you rely on the absence, basically, of two elements. One is some measuring goes on without taking it off before you send the information. Just focusing on that, I just want to keep these things straight. Yes. Am I right that the only device in your brochure that is described as being usable that doesn't meet that requirement is your continuous monitor? Yes, I believe that is correct. Okay, so that's already some evidence. And then there is at least a suggestion from what you describe as an option of sending the information to the doctor by the syncing process. You think that there's no basis for saying anybody ever used that? If I could take a step back, the answer to your question is no. But if I could take a step back, what the claim requires is the use of a very particular type of measuring device, one that can be separated from the body of a patient. It requires a particular type of data, not lifestyle data, which is very important to diabetes patients. For example, nutrition, exercise, and the like. It has to be something that's measured from the body of the patient. It also requires that that data be uploaded to a Medtronic server and downloaded by the doctor in the form of a chart or graph. So put aside the graph. Yeah. Is a list of two numbers a chart? Why not? By list of two numbers, if your honor is asking if the raw data is transferred from Medtronic's server in what I believe are called CSV formats, comma-separated value format, then that, in my view, is not a chart within the meaning of the... But that issue has not been litigated, right? Whether CSV values, the content, constitutes a chart. And am I remembering something from the JA that talks about CSV that talks about columns? I'm sorry. Are you remembering from what? From the joint appendix. There's something in there that describes the .CSV format with reference to columns. Am I misremembering that? I'm not... That sounds like a chart to me. Let's assume it is a chart. It still requires that the doctor receive the data from Medtronic's server. And when we look at the manuals on which the appellant relies here, those manuals show that one of the ordinary uses of the Care Link system is for the patient to walk into the doctor's office with his or her blood glucose meter and directly download to the doctor's computer the data representing the values that that particular device has collected and measured. It's called an optional setting in the manuals that are part of this record that the data can be... Rick, can I shift you to the other issue? Yes, absolutely. As I think you might tell, interests me considerably more. Yes. And I don't want you to talk about the conditions participation. I don't at present have any problem with that. I want you to focus on the parenthetical about Grokster in Akamai-5. Yes. It says vicarious liability can be established if you, the defendant, profit from the other person's activity and have the ability and control... ability and right to control it. Yes. Grokster didn't have to apply that standard, as it says in footnote 9, because it did it under inducement. So we don't know whether that would have been true in Grokster or not. But it cites a couple of earlier cases, Shapiro-Bernstein cases. Why is it that under that standard, Medgraf couldn't... couldn't establish vicarious liability? So under the right and ability to control... call it doctrine from Grokster and the associated line of copyright cases on which this court has previously relied for some of these doctrines in patent law. What we... what you need is to be able to point to some ability by the defendant to... sorry if I'm just repeating the standard, but to control the activities of users of the system. And I know, Judge Toronto, you did not want me to refer to the participation in... And I wouldn't if I were you. And therefore, I won't. But I would like to refer the court to the appendix at 924. The issue of synchronizations came up earlier. Synchronizations, meaning the process of the physician obtaining the data from... directly from Medtronic server as opposed to from the patient's metering device when the patient walks it in. They bring in a thumb drive or something. Yes, exactly. It can be a thumb drive. It can be the meter itself that can actually transfer the data as well. But that process of synchronization is necessary for any claim of infringement. And I believe that is undisputed in this record. But it's an insufficient predicate for infringement because synchronization alone does not necessarily require that all the elements of the claim are satisfied because it could be CGM, continuous glucose monitoring data. When you're through with that thought, I have a question. Go ahead. Okay, I can stop. All right. Judge Taranto is a much more experienced trial lawyer than I, and he has demonstrated how you can look at this record as a good trial lawyer would and see, well, how about this and how about that? I take it you're a trial lawyer also? I am. Help me understand this. If you were trying this case on behalf of MedGraph, would you put in the evidence relative to what you understood to be the law of the case at that time, or would you put in other evidence that you thought really wasn't relevant to the legal standard? My point being, we now have a new legal standard. Can we say with some confidence that there's no way a good trial lawyer might have put in additional evidence in the record in light of a different legal standard? The answer to the question is that if I were counsel for MedGraph below, I would have put in all evidence going to direction and control because that's the penumbra under which these various standards for attributing action arise, whether it is a contract. So in your view, ACMI-5 really didn't change that much from ACMI-4? I'm sorry. It added an additional prong to agency and contract as ways of finding direction and control by specifying this participation in the system, receipt of benefits. I would assume that would require different evidence, I take it. It would. It could. But my point is simply that if I were in MedGraph's counsel's shoes to answer your question directly, I would put in all of the evidence going to direction and control, no matter whether it cleanly fell into an agency or other type of category. But in this page of the record, this is the page that makes so clear that Medtronic is not exercising any ability to control the use of its system. What it is telling at A924, what it is telling its patients is that, quote, and I'm at the fifth bullet point at the top of the page, speak to your health care provider to determine the best way to share your data, so that together you can continue to improve your diabetes management. Can I get back to some of those more procedural things that Jeff Slager was talking about? At least this question, perhaps, I should ask of your counsel on the other side. Did they make in their blue brief an argument that they need more discovery than they want? They do say we would like to present our material in a more Akamai-five focused way than we could possibly have done however many years ago the motion was actually filed, a long time ago. But do they say we limited our discovery part of what should go on on remand is reopening discovery so we can propound discovery requests that are more focused on the new standard? I believe they raised that in their opening brief and said it would be up to the discretion of the district judge. But they also said in their responsive brief, and this is at page 13 of that brief. The gray brief? Yes. I believe the quote is that all or some, most if not all of the evidence going to the Akamai-five standard may already be in the record now. And so what they have not done in this appeal, and I've not heard today, is identify what facts there are in this record or what facts they might even hopefully develop. Were they permitted by the district judge to take additional discovery? That would create some genuine issue, particularly in light of the passage that I just identified at A924, which makes clear that Medtronic is telling its patients, you do what you and your physician think is best about how to share your data. And of course, how that data is shared is critical to whether or not the steps of the method are being carried out. And that's why we are asking respectfully that the judgment of the district court be affirmed, because there is no evidence in this fully-developed record after this long period of time that would allow the plaintiff and appellant here to meet any standard that this court has imposed for divided infringement in the last six years. We don't know what the trial judge would have done if the plaintiff had filed a 60B motion or 60B1 motion instead of the 62.1, do we? Well, I think, actually, the district judge said, Judge Plager, that he did not see a basis for a successful 60B motion on these facts. But certainly, we don't know what the answer is. Yes, we don't know what he would have done. I see I'm over my time. Thank you, Mr. Boski. Thank you very much. Mr. Ghani has some rebuttal time. Medtronic, in fact, does admit, in response to Judge Soronto's inquiry, that at least in 20% of cases, there could be infringement. Now, it argues that patients don't have to use the infringing steps. But it does admit in its briefing that, in fact, it does. Right, but let me pick, I guess, the only thing I am focused on at the moment is this right and ability to control. Why is it not absolutely clear from the material we already have that there could not possibly be facts for you to discover indicating that they do, in fact, have the ability and right to control patients' use? They absolutely do have the right and ability to control patients' use. They provide the patients the interface to the entire system. They provide patients the password to the system. So they obviously have the right. This is all their system. There are claim elements here, the taking of the measurement, the separating of the device, the communicating of the data, both uplink and downlink, where the downlink might not actually have to occur because it's sitting on the device. A bunch of those elements are elements that, I will say this and then you'll respond, the record makes absolutely clear they have neither the ability nor the right to control. They do have the ability and right to control some elements because it's their software, but not all of the elements. And why, if the record makes that clear, would the possibility of more discovery, how could it possibly matter? Well, the question is, I mean, if we have more discovery, we could clarify, for example, how they control more information, for example, on how they may influence or control the patient's use of these particular steps. I mean, we know that they provide the software, the password, the information. They say, look at these studies. This is how you do it to get these great results. So they are, I mean, they are inducing patients to carry out these steps. They have the right to control these steps. When we ask the inquiry about the right, what is the right? They have the right to shut the whole thing down or they have the right to allow a patient to use the system as they have advocated is the most beneficial way to use the system. And they have the ability to control the manner and timing of its use. They control the entire system. They can change the software as they please. They can, in terms, they can provide different information in the software, how you get into the system. So this question is, do they have to control every single step? Well, I think under Occupy 5, the action of other parties can be attributed to them if they control the manner or the timing and they receive a benefit and or receive a benefit. They receive a benefit. They make money selling some great profit, billions of dollars of sales of meters and puffs. They get a benefit. They control the manner. Counsel, we have the right to control the timing of your argument and the red light indicates that it's over. Thank you. Thank you. We'll continue this under advisement.